UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES C. HILLIARD, an individual,<br><br>Plaintiff,<br>vs.<br><br>MURPHY LAND COMPANY, LLC, an Idaho Limited Liability Company;<br><br>Defendant. | Case No. 1:18-cv-00232-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.    INTRODUCTION

Pending before the Court is a Motion for Summary Judgment filed by Defendant Murphy Land Company, LLC ("Murphy Land"). Dkt. 21. On November 15, 2019, the Court held oral argument and took the motion under advisement. Upon review, and for the reasons set forth below, the Court finds good cause to GRANT Defendant's Motion for Summary Judgment.

## II.    BACKGROUND[1]

On December 30, 2010, Plaintiff James Hilliard and Defendant Murphy Land entered into a Real Estate Option to Purchase Agreement (the "Agreement").[2] Murphy

---

[1] All facts are construed in the light most favorable to Hilliard, the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[2] A copy of the Agreement is docketed as Dkt. 21-3, hereafter referred to as "Agreement" in this Order's citations.

Land granted Hilliard the option to purchase back the Crystal Springs Farm property (the "Property") "for, and only for, the location of a nuclear power plant facility" (the "Option"). Agreement, § 4. Under the Agreement, and the accompanying Memorandum of Real Estate Option to Purchase Agreement, if Hilliard failed to exercise his option to purchase the Property by December 30, 2016, the Agreement would expire and Hilliard would no longer have any claim or interest in the Property.

From 2014 to 2016, the purchase price of the Property was $13,680,000 unless (in the intervening time since the Agreement was signed) Murphy Land had erected capital improvements on the Property. In that case, Murphy Land was required to provide a review of its capital improvement payments and receipt documentation to Hilliard, and the purchase price of the Property would be increased by the amount Murphy Land had expended.

On May 6, 2016, Hilliard emailed Murphy Land a request for documentation of any funds expended to erect capital improvements. In response, Murphy Land requested documentation of Hilliard's nuclear power plant development plans. On July 27, 2016, Hilliard gave notice that he was exercising the Option pursuant to Section 4 of the Agreement.

From May 6, 2016, to September 12, 2016, both parties continued to make their requests for the desired documentation. After September 12, 2016, all communication between the parties stopped. Murphy Land never sent Hilliard the requested backup documentation and tax returns. Hilliard never sent Murphy Land the requested documentation related to nuclear power plant development. Additionally, Hilliard never

tendered payment to Murphy Land nor put any purchase amount in escrow. Furthermore, he did not complete the purchase of the Property under the Agreement and no instrument of conveyance of the Property was recorded prior to December 30, 2016.

On or about April 17, 2017, Murphy Land sold the Property to Global AG Properties II USA, LLC. The transfer of the Property's title was duly recorded in the Owyhee County Recorder's Office in Idaho. Dkt. 23-4.

On May 29, 2018, Hilliard filed his "Complaint for Declaratory Relief" against Murphy Land in federal court based on diversity of citizenship jurisdiction. Dkt. 1. Hilliard is a citizen of California and Murphy Land is a citizen of Idaho. Hilliard alleges in his Complaint that he had exercised the Option to purchase the Property on July 27, 2016, and that Murphy Land subsequently failed to provide the capital improvements documentation relating to the purchase price as required.

On October 5, 2018, Murphy Land filed the pending motion for summary judgment. Dkt. 21. Murphy Land asserts it is entitled to summary judgment because Hilliard is only seeking declaratory judgments as his remedy and such judgments would be moot because the time for performance of the contract has come and passed without Hilliard performing his obligations under the Agreement. Additionally, it should be entitled to summary judgment since Hilliard failed to properly exercise the Option before the Agreement terminated as of December 30, 2016.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "there is no genuine issue of any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). Evidence includes "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . ." *Celotex*, 477 U.S. at 322 (quoting Fed. R. Civ. P. 56(c)).

The moving party initially bears the burden to show no material fact is in dispute and a favorable judgment is due as a matter of law. *Id.* at 323. If the moving party meets this initial burden, the non-moving party must identify facts showing a genuine issue for trial to defeat the motion for summary judgment. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). The Court must grant summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### IV.  DISCUSSION

Before analyzing the Agreement, the Court first reviews whether there is a justiciable controversy before it or if Hilliard is essentially seeking an advisory opinion from the Court.

In his Complaint, Hilliard "prays for judgment as follows":

> 1) For a declaration that plaintiff has properly exercised the Option;
> 2) For a declaration that the purchase price of the property pursuant to Section 5 of the Option is $13,680,000 and that defendant is not entitled to an increase in the purchase price of the property.
> 3) For a declaration that plaintiff is entitled to the value of all growing crops on the property as of September 26, 2016. To present.

> 4) For costs of suit incurred herein, including attorneys' fees pursuant to Section 25 of the Option; and
> 5) For such other and further relief as the Court deems just and proper [sic]

Dkt 1, at 4. Here, Hilliard is not seeking specific performance or to quiet title. *See* Dkt. 22, at 19 (Hilliard acknowledging he would need to amend his Complaint to seek that remedy: "were Hilliard to amend, seeking specific performance . . . ."). Additionally, he does not specifically allege any breach of contract claims, so he cannot recover monetary relief on those grounds. Finally, he does not ask for damages at all in his prayer for relief.

Declaratory relief actions are different than actions seeking damages. "A particular declaratory judgment draws its equitable or legal substance from the nature of the underlying controversy." *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1251 (9th Cir. 1987) (internal citations omitted). Even if the declaratory relief plaintiffs seek are truly equitable in nature, their claim for declaratory relief may be moot. *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 867 (9th Cir. 2017).

As a result, only some claims seeking a declaratory judgment satisfy Article III's case or controversy requirement. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "A case or controversy exists justifying declaratory relief only when 'the challenged . . . activity . . . is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the . . . parties.'" *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1098–99 (9th Cir. 2001) (quoting *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1989)). Thus, the test for mootness applied to a claim for declaratory relief

"is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273 (1941)).

A declaratory judgment that "vindicate[s] [plaintiffs'] rights and make [them] the prevailing party in [the] action . . . . is not an appropriate exercise of federal jurisdiction." *Bayer*, 861 F.3d at 868. The "value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original).

1. **Hilliard's Requests for Judicial Declarations that He Properly Exercised the Option and the Purchase Price was $13,680,000**

Here, even if (1) the Court declares Hilliard properly exercised the Option and the purchase price was $13,680,000; and (2) Hilliard *had* pled a claim for specific performance, the Court could not change the ownership of the property. As of April 17, 2017, Murphy Land "no longer holds any title or interest in the Property."[3] Dkt. 23, at 9; Dkts. 23-3, 23-4.

In *Paloukos v. Intermountain Chevrolet Co.*, a sale of goods case governed by the Idaho version of the Uniform Commercial Code ("UCC"), the Supreme Court of Idaho held "[i]t is well established that the courts will not order the impossible, such as ordering the seller under a sales contract to sell to the buyer that which the seller does not have,"

---

[3] The Complaint was filed on May 29, 2018, over a year after Murphy Land sold the Property. Dkt. 1.

and dismissed the claim for specific performance. 588 P.2d 939, 944–45 (Idaho 1978). In *Fazzio v. Mason*, a real estate case, the Supreme Court noted in dicta that while its ruling in *Paloukos* related to a case governed by the UCC, rather than the sale of property, "the case sets forth the general equitable doctrine that a court should not order specific performance where it is *impossible*—not merely impractical—for the defendant to comply." 249 P.3d 390, 394–95 (Idaho 2011). Thus, "[t]he defense of impossibility is a complete defense that excuses the defendant from performing." *Id*. at 393–94. Because Murphy Land no longer holds an interest in, or title to, the Property, the defense of impossibility is a complete defense that excuses Murphy Land from specific performance. *Id*. at 393–94.

Thus, judicially declaring that Hilliard properly exercised the Option and the purchase price was $13,680,000 would merely vindicate Hilliard's legal rights and make him the prevailing party in the action—it would not settle a dispute that affects the behavior of the defendant towards the plaintiff. The Property would remain in possession of the new owner, Global AG Properties II USA, LLC. Accordingly, Hilliard's first two causes of action (i.e., requests for relief) appear to be moot; there is no live controversy for this court to resolve.

However, in Hilliard's response to Murphy Land's motion for summary judgment, he raises for the first time that he seeks "ancillary" or monetary damages related to his claims. *See* Dkt. 22, at 3 ("The complaint seeks declaratory relief and ancillary relief in the form of damages for Murphy [Land]'s breach of the option contract."). Murphy Land argues Hilliard cannot recover the later type of damages because his Complaint does not

request "ancillary relief," and the Court should ignore such claims because "summary judgment is not a procedural second chance to flesh out inadequate pleadings," such as "Hilliard's unpled breach of contract and specific performance claims." Dkt 23, at 7–8. (quoting *Pro-Formance Lube Ctr., Inc. v. BP Lubricants USA, Inc.*, 2009 WL 10678745, at *7 (D. Idaho July 31, 2009) (quoting *Navajo Nation v. United States Forest Service*, 535 F.3d 1058, 1080 (9th Cir. 2008)).

Here, not only did Hilliard fail to request any damages in his Complaint or specifically allege a breach of contract claim, he also titled it "Complaint for Declaratory Relief." Dkt. 1, at 1. Hilliard's "declaratory relief claim essentially seeks to establish its rights to damages pursuant to a fully-matured claim for breach of contract, which the Court finds inappropriately suited for an action for declaratory relief." *Enodis Corp. v. Cont'l Cas. Co.*, No. CV 04-4357 CAS PJWX, 2009 WL 863586, at *9 (C.D. Cal. Mar. 26, 2009), *aff'd in part, rev'd on other grounds in part and remanded*, 417 F. App'x 668 (9th Cir. 2011).

District courts have discretion to decide that plaintiffs are not entitled to damages related to their declaratory relief claims. *See Cont'l Cas. Co. v. Enodis Corp.*, 417 F. App'x 668, 670 (9th Cir. 2011) ("The district court did not err in concluding that granting the [monetary] relief sought by [the plaintiff] would be inconsistent with both the purpose of declaratory relief in general and with the Court's November 19, 2007 order denying [the plaintiff] leave to add a breach of contract claim." (internal quotation marks and citation omitted)). This is because parties must have notice of the claims asserted against them. As the Ninth Circuit detailed at length in *Seven Words LLC v. Network Sols*:

> Rule 8(a)(3) requires a claim to contain "a demand for judgment for the relief the pleader seeks." Although our decisions go to great lengths to underscore the breadth of notice pleadings, *see, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 679–80, 682–88 (9th Cir. 2001), the principle is not without limits. Surely a simple request "for damages" would satisfy the notice requirement without imposing any undue burden on the drafter. Otherwise, notice pleading might allow a plaintiff to file, in any case, a complaint consisting of no more than the useless statement, "I was wronged and am entitled to judgment for everything to which I am entitled." Such a result would undermine the intent of the civil rules and prejudice the opposing party.

260 F.3d 1089, 1098 (9th Cir. 2001). The *Seven Words* court ultimately declined to read a damage claim into the plaintiff's complaint because it was "made after two years of litigation, after various representations that it was seeking only declaratory and injunctive relief, after a motion to dismiss, and at the eleventh hour, only days before oral argument on appeal." *Id. See generally Navajo Nation*, 535 F.3d at 1080 (holding that although the claim was briefed at summary judgment by all parties and presented at oral argument to the district court, "our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court").

The Court agrees with the Ninth Circuit that pleadings should, both literally and in theory, consist of more "than the useless statement, 'I was wronged and am entitled to judgment for everything to which I am entitled.'" *Seven Words*, 260 F.3d 1089. Accordingly, it declines to read a breach of contract damage claim into Hilliard's "Complaint for Declaratory Relief." Furthermore, as previously stated, even if Hilliard *had* included a claim for specific performance, it is impossible for the Agreement to be performed given the sale of the Property. Thus, the Court dismisses his first two requests

for judicial declarations regarding the interpretation of the Agreement as moot.

   **2. Hilliard's Request for a Judicial Declaration that He Is Entitled to the Value of the Growing Crops on the Property**

With regards to Hilliard's third cause of action, that for a declaration that he is entitled to the value of all growing crops on the property from September 26, 2016 to the present, the Court also dismisses it with prejudice.

The Court first notes that Hilliard did not ask for breach of contract damages but rather asked only for a declaration that he is entitled to certain rights. Again, such a declaratory relief claim essentially seeks to establish Hilliard's rights to damages pursuant to a fully-matured claim for breach of contract, rather than an action for declaratory relief. Here, though, the Court could more plausibly construe Hilliard's claim to be for breach of contract damages and find that Murphy Land had sufficient notice of the claim such that amendment would not be unduly prejudicial.[4] However, even if the Court allowed Hilliard to amend his claim to be a claim for damages, such amendment would be futile due to the clear language of the Agreement.

In breach of contract cases, courts first look to the document's language. "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *C & G, Inc. v. Rule*, 25 P.3d 76, 78 (Idaho 2001). "A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical." *Potlatch Educ.*

---

[4] The Court declines to actually construe Hilliard's third cause of action to be one for breach of contract damages, for the reasons cited in Section 1 of this opinion as well as because Hilliard himself has titled his Complaint in full as one for "Declaratory Relief" and never mentions "breach of contract" in the four corners of his Complaint. *See* Dkt. 1.

*Ass'n v. Potlatch Sch. Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho 2010) (internal citations omitted). "Whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact." *Id*.

Here, the contact is unambiguous. Section 9 of the Agreement details the terms of how the parties shall conduct the closing of the purchase. Under the Agreement it lays out:

> **Seller's Right to Remove Growing Crops**. Seller shall have the right to remove any and all growing crops on that portion of the subject property to be purchased hereunder or, in the alternative, Buyer may elect to reimburse Seller for any documented costs incurred in the growing of the crops.

Agreement, § 9(c). The Agreement explicitly states that Murphy Land, not Hilliard, shall retain profits from crops grown on the Property prior to the transfer. In addition, the Agreement expressly lays out in Section 4, the Option to Purchase clause, that "Seller hereby grants to Buyer the exclusive right and Option to Purchase all right, title and interest in and to the Property for, and only for, the location of a nuclear power plant facility." Agreement, § 4.

The parties never contemplated Hilliard would use the Property to grow crops or that Hilliard would be entitled the value of the crops grown by other people on the Property. Even if the third cause of action was for breach of contract damages, Hilliard would still not be entitled to the crop value. "The measure of damages for breach of contract are those which will 'fairly compensate the injured party for his loss.'" *Broersma v. Sinor*, 676 P.2d 730, 733 (Idaho Ct. App. 1984) (quoting *Anderson v. Gailey,* 606 P.2d 90, 94 (Idaho 1980). Here, the loss the parties contemplated Hilliard might suffer when signing the Agreement for breach of contract was the loss of using the property solely as the location of a nuclear

power plant facility. Thus, even if the Court granted Hilliard leave to amend, such amendment would be futile.

## V. LEAVE TO AMEND

Once the deadline for completing discovery "set in the scheduling order has passed, the party's request to amend is judged under Federal Rules of Civil Procedure ("FRCP") 16's 'good cause' standard rather than the 'liberal amendment policy' of FRCP 15(a)." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1559 (2018) (citing *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013)). "Rule 16 was designed to facilitate more efficient disposition of cases by settlement or by trial. If disregarded it would 'undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *Walker v. City of Pocatello*, No. 4:15-CV-00498-BLW, 2017 WL 1650014 at *1 (D. Idaho May 1, 2017) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

The "central inquiry" of whether good cause exists "is whether the requesting party was diligent in seeking the amendment." *DRK Photo*, 870 F.3d at 989; *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion," but a court should focus its inquiry "upon the moving party's reasons for seeking modification." *Johnson, Inc.*, 975 F.2d at 609. If the moving party was not diligent, "the inquiry should end." *Id*. at 609. On the other hand, if the party seeking amendment

establishes "good cause" under Rule 16, the party then must demonstrate that amendment is proper under Rule 15. *Id*.

On or around April 17, 2017, Murphy Land sold and transferred title to the Property to Global AG Properties II USA, LLC, and those records were duly recorded as Instrument #292512 in the Idaho Owyhee County Recorder's Office. Dkt. 23-4. "Under Idaho's recording statutes, every conveyance of real property acknowledged or proved, and certified and recorded as prescribed by law, is constructive notice of its contents to subsequent purchasers and mortgagees from the time it is filed." *Kalange v. Rencher*, 30 P.3d 970, 973 (Idaho 2001) (citing I.C. § 55–811). "Constructive notice imparted from the record, therefore, is a matter of statute." *Id*.

Over a year later, Hilliard filed his "Complaint for Declaratory Relief" against Murphy Land on May 29, 2018. Dkt. 1. Murphy Land moved for summary judgment on October 5, 2018. It explicitly stated in its reply, filed on November 9, 2018, that "Murphy Land [C]ompany sold and transferred title to the Property on or about April 17, 2017, and those records were duly recorded with the Owyhee County Recorder's Office . . . ." Dkt. 23, at 9. Pursuant to the Case Management Order, the completion deadline for all fact discovery was November 15, 2018. Dkt 20, para. 6. Hilliard had both constructive and actual notice before discovery closed that the relief he was seeking was moot.

Due to matters outside of the parties' control, the Court heard oral argument on Murphy Land's motion for summary judgment on November 15, 2019, more than a year after Murphy Land filed its motion for summary judgment and after the deadline for discovery had passed. During that time, Hilliard never sought leave to amend and still has

not formally requested leave to amend his Complaint.

During the motion hearing, the Court asked Hillard whether he even intended to seek leave to amend. His counsel responded yes, that Hilliard would amend the complaint to take into account what he had recently learned,[5] but only if Hilliard's Complaint survived the motion for summary judgment. Hilliard's counsel also stated that it was his understanding that in federal court, parties do not typically amend pleadings while summary judgment is pending, so Hilliard was not going to seek leave to amend until the Court ruled on the pending motion. That understanding and calculation had not been previously conveyed to the Court via any formal or informal means.

The Court cannot find that such internal legal strategies by a party show the diligence required to satisfy Rule 16's "good cause" standard. Additionally, even if Hilliard had only learned about the sale of the Property when Murphy Land gave him actual notice on November 9, 2018, *and* Hilliard's rationale for not moving to amend his Complaint was correct (the Court is not convinced), he would still have not shown the requisite diligence. Hilliard had constructive notice before his Complaint was even filed that his requested declaratory relief would merely amount to an advisory opinion, as the Court could not order Murphy Land to do the impossible and complete the sale of real estate pursuant to the Agreement. If Hilliard had been sufficiently diligent, he would have never had to amend his Complaint, as he would have already taken the relevant and knowable facts into account

---

[5] It was unclear whether counsel for Hilliard was using the term "recently learned" to reference the fact that Hilliard had only learned that the Property was sold from Murphy Land's November 9, 2018 reply (after the motion for summary judgment was filed), or that he had only learned the fact at the hearing itself, as counsel also said during the hearing that it was the first time he had heard Murphy Land sold the Property.

prior to filing his Complaint on May 29, 2018.

A party who "'has been aware of the facts and theories supporting amendment since the inception of the action' and has failed to amend despite opportunity to do so has not been diligent." *Ohio Sec. Ins. Co. v. Axis Ins. Co.*, No. C15-5698 BHS, 2018 WL 5013774, at *2 (W.D. Wash. Oct. 16, 2018) (quoting *Neidermeyer v. Caldwell,* 718 F. App'x 485, 489 (9th Cir. 2017), *cert. denied,* 139 S. Ct. 73 (2018). As such, the Court finds Hilliard was not diligent in asserting any claims other than his declaratory relief ones. Thus—assuming he ever formally requests leave to amend—he has failed to show good cause to add or amend any claims after the time for amending pleadings has expired. Because Hilliard has not shown good cause under Rule 16, the Court need not address whether amendment would be just under Rule 15; the Court dismisses Hilliard's complaint without leave to amend.

## VI. CONCLUSION

Murphy Land's motion for summary judgment is granted because there is not a justiciable controversy before the Court. Hilliard is preemptively denied leave to amend his Complaint. The case is dismissed with prejudice.

///
///
///
///
///
///
///

## VII. ORDER

Therefore, it is HEREBY ORDERED:

1. Defendant's Motion for Summary Judgment (Dkt. 21) is GRANTED;

2. This case is dismissed in its entirety and closed;

3. A separate judgment will be issued.

DATED: December 9, 2019

David C. Nye
Chief U.S. District Court Judge